861 F.2d 159
 57 USLW 2305, 12 Fed.R.Serv.3d 1181,
10 Employee Benefits Ca 1425
 James F. BASH, et al., on behalf of themselves and all
others similarly situated, Plaintiffs,
and
William H. O'Brien, Jr. and Andrew Vogt, as unnamed members
of the plaintiff class, Plaintiffs-Appellants,
v.
FIRSTMARK STANDARD LIFE INSURANCE COMPANY, et al.,
Defendants-Appellees.
 No. 88-1122.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 13, 1988.
Decided Nov. 7, 1988.
Order on Denial of Rehearing Dec. 20, 1988.
 
 Jerry Williams, Williams, Taylor & Schmits, Indianapolis, Ind., for plaintiffs-appellants.
 Stanley C. Fickle, Barnes & Thornburg, Nicholas C. Nizamoff, White & Raub, Indianapolis, Ind., for defendants-appellees.
 Before POSNER, FLAUM, and MANION, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 This appeal, from the settlement of a class-action suit brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. Secs. 1001 et seq., with pendent claims under state common law, comes to us with an unusual procedural history.
 
 
 2
 The case began in 1984 when attorney Jerry Williams filed a complaint on behalf of four named plaintiffs who sought to represent a class consisting of the 53 participants in the pension plan of Standard Life Insurance Company of Indiana. The members of the class were former employees of Standard Life. The defendants included Standard, two successive corporate purchasers of Standard, and the pension plan's trustees, which included a bank. The pension plan had been a defined-benefits plan; that is, it had specified the pension benefits to which participants would be entitled when they retired. Shortly before the suit was filed, the bank had paid the participants and beneficiaries of Standard's pension plan their accrued benefits--some $1.2 million in all--and had handed over the balance of the plan's assets--another $1 million--to Standard. The plaintiffs' principal claim was that this balance, the "surplus assets" as the parties call them, should have been distributed to the participants. In effect they wanted to treat the plan as a defined-contributions plan with a defined-benefits floor.
 
 
 3
 The district judge certified the case as a Rule 23(b)(3) class action. After much pretrial discovery, the defendants in 1986 moved for summary judgment, and in 1987 the judge granted their motion in major part. He dismissed one defendant, rejected the "surplus assets" claim, dismissed all the pendent counts, and directed that trial be confined to the issue whether the defendants had computed the class members' accrued benefits correctly. The plaintiffs asked the judge to make his order granting summary judgment a final, appealable order under Rule 54(b) of the Federal Rules of Civil Procedure. He refused--and rightly so. Although he could have entered a final judgment to the extent that his order disposed of one of the parties to the case, it was far more sensible to wind up the litigation in the district court before involving this court in it.
 
 
 4
 Trial began on June 1, 1987. The next day the parties informed the judge that they had negotiated a settlement agreement. Later, attorney Williams submitted to the court a form of notice on which the parties had agreed, to which was attached a copy of the negotiated settlement agreement. The settlement was nominal; the plaintiffs were to receive just $15,000, all of which would be earmarked for the costs of the suit. The settlement included a provision that none of the four named plaintiffs would appeal.
 
 
 5
 The judge approved the notice of proposed settlement on October 26, 1987, and shortly afterward (but the date is not in the record) it was mailed together with the agreement to each of the 49 unnamed class members. The notice stated that the judge would hold a hearing on the fairness of the settlement on November 30. In response to the notice, three of the unnamed class members, including O'Brien and Vogt, the appellants in this court, wrote letters to the judge objecting to the terms of the settlement. At the hearing on November 30, Williams, asked by the judge to address the objections that had been submitted, stated that they contained nothing new--they were addressed to issues the judge had resolved in his grant of partial summary judgment. In Williams' words, "we believe the matters raised by Mr. Vogt and Mr. O'Brien in their objections would not be a reason not to approve the settlement today; ... those had already been presented to the Court before the summary judgment entry." On December 21 the judge approved the settlement in an order that Williams had submitted to him.
 
 
 6
 Now for the surprise: On the twenty-ninth day after the entry of the final judgment approving the settlement, O'Brien and Vogt--represented by Williams--filed their notice of appeal. Their principal ground for challenging the settlement is that the judge erred in his entry of partial summary judgment for the defendants. They ask us to throw out the settlement and reverse the partial summary judgment.
 
 
 7
 The defendants defend the reasonableness of the settlement and the soundness of the partial summary judgment. But in addition, and logically prior, to making this defense they argue that Williams had no right to challenge the settlement that he had negotiated, and that the appeal should be dismissed without reaching the merits. These are two points, not as it might seem one. Supposing that Williams acted improperly, it does not follow that the appeal must be dismissed. Alternative sanctions would include simply removing him from the case.
 
 
 8
 Did Williams act improperly? At first glance his position resembles that of the lawyer who drafts a will and is then retained by an heir to break it. Williams negotiated a settlement on behalf of the class that he represented, and urged the court to approve it. Although tiny (less than $300 per member of a very small class), the settlement may be in the best interests of the named plaintiffs, for they might otherwise have to dig into their own pockets for $15,000 to pay for expenses incurred in the litigation. It might appear, therefore, that Williams has sold these clients down the river, by bringing on behalf of other members of the class an appeal that, even if successful in overturning the settlement, could eventuate in a judgment for the defendants and by doing so simply increase the expenses that the named plaintiffs will have to defray. He represents, however, that the named plaintiffs did not object to his bringing this appeal on behalf of the objectors (though the named plaintiffs are barred by the terms of the settlement from bringing their own appeal); and although he has proffered no documentation in support of this representation, we have no reason to doubt his truthfulness. The benefit of the settlement to the named plaintiffs--a benefit consisting in avoiding the possibility of having to bear additional expenses of litigation--is conjectural, and may well have an expected value close to zero, since, for all that appears, the vast bulk of these "expenses" consist of Williams' attorney's fees, which presumably were contingent on the success of the suit. Granted, the named plaintiffs agreed not to appeal, but perhaps only because they didn't want to incur any additional expenses in this litigation. As Williams intimates, they may be cheering on the appeal from the sidelines in the hope that if the settlement is invalidated they will benefit eventually.
 
 
 9
 Williams argues in further defense of his representation of the appellants that with only thirty days to file the notice of appeal, O'Brien and Vogt could not have retained another lawyer; a new lawyer would not have been familiar with the case. But Williams could have filed the notice of appeal on behalf of O'Brien and Vogt and told them to retain counsel of their choice to brief and argue it.
 
 
 10
 When all is said and done, Williams has represented two sides of the same case--the defense of the settlement before the district judge, and the attack on the settlement in this court. But conflicts of interest are built into the device of the class action, where a single lawyer may be representing a class consisting of thousands of persons not all of whom will have identical interests and views. Recognizing that strict application of rules on attorney conduct that were designed with simpler litigation in mind might make the class-action device unworkable in many cases, the courts insist that a serious conflict be shown before they will take remedial or disciplinary action. See, e.g.,In re Agent Orange Product Liability Litigation, 800 F.2d 14, 18-20 (2d Cir.1986); Saylor v. Lindsley, 456 F.2d 896 (2d Cir.1972) (Friendly, J.); Piambino v. Bailey, 757 F.2d 1112, 1143-46 (11th Cir.1985); In re Corn Derivatives Antitrust Litigation, 748 F.2d 157, 162-66 (3d Cir.1984) (concurring opinion). Such a conflict has not been shown here. The appeal on behalf of disgruntled class members does not jeopardize a settlement "won" by the named plaintiffs and remaining unnamed class members; the settlement was a cave in.
 
 
 11
 Williams might be thought to have deceived the district judge. The only plausible interpretation of the transcript of the fairness hearing is that Williams assured the judge that he needn't consider the objections to the settlement--they were old hat, implicitly without merit. If the judge had known that the lawyer for the class believed that the settlement was unreasonable--as Williams now argues to us with great vigor that it was--the judge might have reconsidered his decision or at least have given a fuller statement of his reasons for believing the settlement reasonable. One of the objections to the settlement that Williams presses on us is that the judge's statement of reasons was scanty. The judge, however, "is entitled to rely heavily on the opinion of competent counsel," Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir.1980); see also Gautreaux v. Pierce, 690 F.2d 616, 634 (7th Cir.1982), as Judge Dillin had every reason to think he was doing. If counsel fails to explain--worse, if he deliberately withholds mention of--potential objections that require a detailed statement of reasons for rejecting, he is letting the judge down.
 
 
 12
 But there is no indication that Williams' advice to the judge was insincere when rendered. It is merely that after in effect abandoning the case for the named plaintiffs, Williams was approached by the objectors and undertook to represent them in this court. Although this conduct was irregular and would have been grossly improper in a case where the attorney was attacking a favorable settlement that he had won in the district court on behalf of other class members, there was no attempt to deceive the district judge here. And given the terms of the settlement, Williams' conduct appears not to have disserved his former clients either; they apparently consented, perhaps eagerly, to his new representation.
 
 
 13
 Whatever the ethical implications of his conduct, they do not require that we dismiss the appeal. As parties to the litigation who objected to the settlement, O'Brien and Vogt had a right to appeal. And it is not apparent how if at all the defendants have been prejudiced by Williams' handling the appeal rather than by another lawyer's doing so. Indeed, no one seems to have been hurt by Williams' change of sides, if that is how his conduct should be characterized. The defendants cannot be concerned about Williams' disloyalty (if that is what it was) to the class; tears wept for adversaries are crocodile tears.
 
 
 14
 The appeal happens to be dramatically lacking in merit; and it is better to decide an appeal on the merits than to get entangled in collateral issues of attorney behavior. The basic flaw is Williams' attempt to use the appeal as a vehicle for attacking the order granting partial summary judgment. It is true as he emphasizes that, in general, an appeal from a final judgment brings up for review all of the trial judge's previous rulings that were adverse to the appellant; and it is true that an order approving a settlement is a final order appealable by any party who objects to the settlement. But as with most propositions of law, this is in general, not in every case. A settlement is a special type of final order. It is not an adjudication of the issues of the litigation; it is an avoidance of adjudication. It cannot be attacked as having resolved those issues incorrectly; it was not its purpose to resolve them. See Metlyn Realty Corp. v. Esmark, Inc., 763 F.2d 826, 831-32 (7th Cir.1985). The only basis for attacking a settlement is that it is unreasonable. See, e.g., Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 308 (7th Cir.1985); Donovan v. Robbins, 752 F.2d 1170, 1176-77 (7th Cir.1984). Interim rulings by the district judge may be germane to that determination, but only to that extent is their legal soundness a potential issue on appeal.
 
 
 15
 Williams argues that since the judge refused to make the grant of partial summary judgment appealable under Rule 54(b), there was no way to get the plaintiffs' objections before us except by waiting until a final judgment was entered and then appealing from that judgment. This is both true and irrelevant. If Williams wanted to challenge the partial summary judgment in this court, he needed a final judgment--but a litigated final judgment, not a consent judgment. He could have completed the trial, awaited the entry of the final judgment, and then appealed. Or he could have negotiated a settlement agreement that was expressly conditional on the order of partial summary judgment being upheld on appeal. Dorse v. Armstrong World Industries, Inc., 798 F.2d 1372, 1374-77 (11th Cir.1986); Shores v. Sklar, 844 F.2d 1485, 1489-91 (11th Cir.1988). Then it would have been clear that he was not waiving his right to appeal by consenting to the entry of a final judgment. 15 Wright, Miller & Cooper, Federal Practice and Procedure Sec. 3902, at pp. 408-09 (1976); see Pacific R.R. v. Ketchum, 101 U.S. 289, 295, 25 L.Ed. 932 (1879); Christian Science Reading Room v. City & County of San Francisco, 784 F.2d 1010, 1017 (9th Cir.1986); but cf. Amstar Corp. v. Southern Pacific Transport Co., 607 F.2d 1100 (5th Cir.1979) (per curiam). He did neither of these things. By negotiating a settlement agreement on behalf of the class he limited the scope of appellate review to the issue of the agreement's reasonableness.
 
 
 16
 Is this conclusion unfair to O'Brien and Vogt, who after all had not (prior to the appeal) retained Williams as their counsel, as the named plaintiffs had done? If so, it is an unfairness embedded in the class-action device, and is deemed outweighed by the conveniences of the device. O'Brien and Vogt had, like all other members of the class, a right to opt out of this Rule 23(b)(3) class action and bring their own lawsuit with their own counsel. See Fed.R.Civ.P. 23(c)(2). They did not exercise that right, and by not exercising it lost their right to do anything other than file objections with the district judge (as they did) and appeal from the order approving the settlement--but solely on the ground that the settlement was unreasonable.
 
 
 17
 That is the only real issue on appeal, and it is easily resolved. The settlement, modest as it was, was eminently reasonable. It was modest by virtue of the district judge's rulings on the motion for summary judgment--rulings not directly before us, as we have said. Whether they were correct or not, they were not so far out of bounds as to make the settlement unreasonable. The major issue was the disposition of the surplus assets. The essence of a defined-benefits plan is that the participants' pension benefits are a specified amount, rather than a proportional share of the pension fund's assets, as in a defined-contributions plan. A participant in a defined-benefits plan is entitled only to the defined benefits. He has no right to the assets of the plan. To the extent that those assets are surplus, they act as a cushion against adversity and increase the likelihood that all benefits will be paid in full when the date of payment arrives. Once that day does arrive--as it did here when Standard was sold--and the participants are cashed out to the full extent of their accrued benefits, they have no further claim on the assets left in the pension trust. Those assets return to the employer. The pension documents in this case make that clear. There was no violation of the plan or breach of fiduciary obligation; there was therefore no violation of ERISA.
 
 
 18
 The appellants are trying to convert a defined-benefits plan into a defined-contributions plan--or more precisely to have the best of both worlds, where the employer bears the entire downside risk from investment of the pension plan's assets but all the gains accruing from investment performance that creates surplus assets enure to the employees. This is an inequity of the heads I win, tails you lose variety that neither the ERISA statute nor the Standard pension plan documents perpetrate. See Blessitt v. Retirement Plan for Employees of Dixie Engine Co., 848 F.2d 1164, 1176-77 (11th Cir.1988) (en banc).
 
 
 19
 Was the district judge also acting reasonably when he dismissed the pendent state-law counts? ERISA contains both an emphatic preemption provision, 29 U.S.C. Sec. 1144(a); see, e.g., Mackey v. Lanier Collections Agency & Service, Inc., --- U.S. ----, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987), and an implied prohibition of oral modifications of pension plans, see 29 U.S.C. Sec. 1102(a)(1), (b)(3); Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986). The combined effect may well be to preclude any claim of promissory estoppel arising from the administration of a pension plan covered by ERISA, as the defendants argue and several courts have held, see, e.g., Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir.1985); Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir.1988)--and that is the principal claim in the dismissed pendent counts. But this we need not decide, for whether the judge was correct in dismissing those counts he certainly was reasonable in dismissing them, and the ERISA counts as well. Therefore the settlement--the modesty of whose terms was the direct result of these dismissals, made in response to the motion for summary judgment--was also reasonable, and is
 
 
 20
 AFFIRMED.
 
 ON PETITION FOR REHEARING
 
 21
 The petition is denied, but we take this opportunity to note case authority, not brought to our attention by the parties to this case, that an unnamed class member has no right to appeal from the final judgment in the class action, unless he has intervened. See Guthrie v. Evans, 815 F.2d 626 (11th Cir. 1987); Shores v. Sklar, 844 F.2d 1485, 1491 (11th Cir. 1988); Walker v. City of Mesquite, 858 F.2d 1071 (5th Cir. 1988). The application of the principle of these cases would have no practical consequences in the present case, and we therefore shall not offer an opinion on the merit of the principle.