## In the Matter of VMS LIMITED PARTNERSHIP SECURITIES LITIGATION.

### Appeal of EQUITY RESOURCES GROUP, INCORPORATED.

#### No. 91–3449.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1992.

Decided Oct. 1, 1992.

Jeffrey P. Lennard, Margo Weinstein, Sonnenschein, Nath & Rosenthal, Ronald A. Schy (argued), Beigel & Sandler, Chicago, Ill., for plaintiffs-appellees.

Robert E. Shapiro, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, Ill., for appellant.

Before MANION, Circuit Judge, and FAIRCHILD and WOOD, Jr., Senior Circuit Judges.

MANION, Circuit Judge.

Equity Resources Group, Inc. ("ERG") appeals the district court's order approving

a sale of property pursuant to a settlement agreement in a class action. Because we conclude that ERG has no right to appeal, we dismiss the appeal.

## I.  FACTS

ERG challenges the district court's administration of a class action settlement that partially settled 40 cases. The cases were consolidated for discovery and pretrial matters in the District Court for the Northern District of Illinois before Judge Zagel as *In re VMS Limited Partnership Securities Litigation,* 90 C 2412 ("Consolidated Actions").[1] The Consolidated Actions were brought in the early or mid-1980's by or on behalf of limited partners in approximately 100 syndicated limited (real estate) partnerships sponsored by VMS Realty Partners or its affiliates. The plaintiffs in the Consolidated Actions asserted claims for violations of federal securities laws, federal anti-racketeering laws, and common law fraud and breach of fiduciary duty. The plaintiffs sought compensatory damages, treble damages under the anti-racketeering laws, and punitive damages. They also sought injunctive relief to prevent sales or other dispositions of the real estate owned by the limited partnerships and to prevent further payments on mortgage loans made by certain defendants. Some plaintiffs sought rescission of their obligation to reimburse a surety or a limited partnership in the event of a default under the promissory notes executed at the time the plaintiffs purchased their limited partnership interests.

On April 3, 1991, *Spitz v. VMS Realty Partners,* No. 90 C 2412 ("Class Action"), was filed as a class action on behalf of limited partners in 95 VMS-sponsored syndicated limited partnerships ("Settling Limited Partnerships") against all of the defendants who had reached a tentative settlement with the Class. The Class was defined as all persons who purchased an interest in one or more of the Settling Limit-

ed Partnerships on or before December 31, 1989, regardless of whether those persons still owned the interest. ERG is the general partner for five funds which are Class members because they hold limited partnership interests in 23 Settling Limited Partnerships. Although ERG was a named plaintiff in one of the suits included in the Consolidated Actions (*Moore v. Bateman Eichler,* 90 C 7115 (N.D.Ill.)), it was not a named plaintiff in the Class Action.

After extensive negotiation, VMS and other settling defendants executed an agreement to settle the Class Action and partially settle the Consolidated Actions ("Settlement Agreement"). The Settlement Agreement promised settling class members specified cash payments, certain liens, and the opportunity to refinance promissory notes that some class members had used to finance investments in the Settling Limited Partnerships. It also provided for the creation of an Oversight Committee that would have the right to challenge before the district court sales of partnership properties proposed by the managing general partners. In exchange, the Class members who did not opt out would give a release of the Settling Defendants and an irrevocable proxy granting the managing partners of the Settling Limited Partnerships the power to vote in favor of a proposed disposition of the property owned by the Settling Limited Partnerships and an amendment to the partnership agreement that permitted the withdrawal and substitution of the general partners.

The establishment of the Oversight Committee proved critical to reaching settlement. Section 1.01G of the Settlement Agreement provides for the creation of the Oversight Committee and describes how it will review proposed sales. That section reads as follows:

> As of the Effective Date, an Oversight Committee shall be established consisting of the members of the Plaintiffs' Counsel Executive Committee that was created pursuant to orders of the Court

---

**1.**  The settlement was partial because the Consolidated Actions continue against the non-settling defendants. Between the Settling Defendants, including VMS, and the Class, the settlement

was total. The Settling Defendants were dismissed with prejudice from each of the Consolidated Actions.

(the "Plaintiff's Counsel Executive Committee") and any other such persons or professionals as the Plaintiffs' Counsel Executive Committee shall designate. The managing general partner of any Settling Limited Partnership shall be required to submit information regarding proposed sales or other dispositions of real property and/or other assets owned by the Settling Limited Partnerships to the Oversight Committee for its review. During the period ending fifteen (15) days following receipt of such information concerning a proposed sale or other disposition, the Oversight Committee shall have the right, in a proceeding before the Court, to challenge the action based upon the inadequacy of the consideration being paid or other business considerations deemed appropriate by the Oversight Committee. In the event of such a challenge, the sale or disposition shall not be consummated until a ruling by the Court. All expenses, including counsel fees, regarding the operation of the Oversight Committee shall be paid from the Settlement Funds.

Section 8.13 of the Settlement Agreement defines "Court" as "the District Court for the Northern District of Illinois."

The Notice to the Class described the Oversight Committee process as follows:

All sales and other dispositions of the real estate or other assets owned by the Settling Limited Partnerships will be negotiated by and will be the responsibility of the respective managing general partners of the Settling Limited Partnerships which own the real estate or other assets, but all sales or dispositions will be subject to review by an Oversight Committee (whose members will be appointed by Class Counsel) representing the interests of the settling Class members. The Oversight Committee will have the right to petition the Court to challenge a proposed sale or disposition which in the Oversight Committee's opinion is not in the best interest of the Class members. In the event such a petition is filed, the proposed sale or disposition will not be consummated until the Court rules on the petition.[2]

On June 10, 1991, ERG, as the General Partner for Fund IV, filed formal objections to the Settlement Agreement. As part of its objections, ERG challenged the Oversight Committee's composition and procedures. In an effort to persuade ERG to accept the Settlement Agreement, VMS and other Settling Defendants negotiated with ERG and signed and filed with the District Court a Memorandum of Understanding. Among other things, that Memorandum stated that the Plaintiffs' Counsel Executive Committee would "irrevocably appoint ERG as a member of the Oversight Committee for each of the twenty-three Settling Limited Partnerships in which ERG currently holds a limited partnership interest." It further provided that in its capacity as a member of the Oversight Committee, ERG would "have full access to all information to be made available to Class Counsel in its capacity as members [sic] of the Oversight Committee and all other rights as provided to the Oversight Committee, including those with respect to access to the Court." In exchange for this appointment to the Oversight Committee, ERG agreed to revoke all of its requests for exclusion and participate in and be bound by the terms of the Settlement

---

**2.** ERG expressed concern about the uncertainties, deficiencies, and risks that it perceived in the proposed Settlement Agreement. Hoping to dissuade other limited partners from joining in the settlement, ERG wrote them letters insisting that the Oversight Committee would not protect them from premature liquidation of the partnerships once they relinquished their voting rights. Parrying ERG's efforts, Class Counsel wrote to the limited partners insisting that they would retain extensive rights to be heard on proposed sales or refinancing through the Oversight Committee because the Oversight Committee would

"raise any legitimate or substantial objections with the Court, which will have a continuing supervisory role with respect to such sales." (Letter from Class Counsel to Limited Partners in Certain VMS Limited Partnerships dated 6/5/91 at 3.) Class Counsel expressed confidence that "the Oversight Committee, when aided with the Court's independence and power, can protect limited partners' interests as well or better than Equity Resources can, especially because the structure can accommodate the concerns of the few as well as the many." (*Id.* at 4–5.)

Agreement for all of its interests.[3] ERG further agreed that although it would not withdraw the objections it had already filed, it would not appeal a final approval of the settlement.

On June 14, 1991, the district court considered the objections to settlement that had been raised. Class Counsel described the Oversight Committee at the hearing as permitting "VMS and its creditors to work together to maximize the value of the properties without being unnecessarily restricted." (Tr. Jun. 14, 1991 at 14.) In summing up the Oversight Committee process, Class Counsel explained that "the process can be there for the general partners at the appropriate time to secure the highest price for the properties without the limited partners losing their opportunity to ensure that the general partners are fulfilling their fiduciary obligations." (Tr. Jun. 14, 1991 at 14.) The district court found that the Oversight Committee was proper and the system of disposing of the properties was fair.[4]

On September 19, 1991, VMS presented to the limited partners and the Oversight Committee a proposed transaction to sell the Lynnhaven Landing, an apartment complex in Virginia Beach, Virginia, owned by Lynnhaven Associates, a VMS limited partnership. VMS also sent the limited partners of Lynnhaven a notice describing the proposed sale and explaining that the sale

was contingent upon review by the Oversight Committee. The notice further stated that if the limited partners had any comments or thoughts they would like the Oversight Committee to consider, they should contact Class Counsel or ERG. The Oversight Committee as a body did not submit any objection to the sale; however, ERG did.[5]

After considering briefs and affidavits submitted by Class Counsel, ERG and counsel for VMS, the district court heard ERG's challenge on October 10, 1991. The district court concluded that the interests to be protected by the Oversight Committee were those of the limited partners as a class and that the Settlement Agreement contemplated only that "the degree to which individual limited partners were damaged by the course of conduct which extricated people from these investments ... would be considered." (Tr. 10/10/92 at 28.) The court further found that ERG's suggested alternatives to sale were largely speculative. The court therefore confirmed the sale.

In a motion for reconsideration, ERG stressed that the court had applied standards that were inconsistent with the Settlement Agreement and placed an unfair burden on the limited partners.[6] The court denied the motion. This appeal followed.

---

3. ERG had planned initially for all but one of its investment funds to opt out of the proposed settlement. In a letter to other limited partners, ERG explained that by remaining in the settlement for one of its funds, it could "maintain standing within the settlement to file a possible formal objection." (Letter to "Our Fellow Limited Partners in VMS Partnership Securities Litigation" dated May 30, 1991.)

4. Furthermore, the court concluded that relinquishing voting rights through proxies was fair in the context of the Settlement Agreement. As the court saw it, "[t]he limited partners purchased the right to tax relief and potential appreciation in the value of the partnership assets. The value of these assets are adequately protected by the Oversight Committee. Without the voting proxies, the Oversight Committee effectiveness would be sharply limited. This compromise struck in the settlement allows the Oversight Committee more freedom in approving or disapproving disposition of the partnership assets." Mem.Order July 16, 1991 at 9, 1991 WL 134262.

5. VMS proposed to sell the property to a not-for-profit agency for $6,175,000 plus a $148,000 mortgage prepayment penalty. ERG contended that the sale was extremely disadvantageous to the limited partners because of its tax consequences, that the property had "upside potential" and that VMS had not explored alternatives to sale.

6. ERG maintained that the Settlement Agreement and the Oversight Committee were supposed to ensure that VMS would meet its responsibilities as general partner. ERG perceived that the court had effectively exempted VMS from having to consider the long-term interests of the limited partners by allowing VMS to adopt a short-term, self-interested liquidation solution without exploration of a better solution.

Judge Zagel reasoned that VMS had the customary duties owed by a general partner to the limited partners but stated, "[I]t is not my purpose here, nor the purpose of the Oversight Committee to essentially pass on the question of

## II. DISCUSSION

We need not reach the merits of this appeal because we determine that despite its involvement and interest in this Class Action, ERG has no right to appeal the district court's order as either a member of the Oversight Committee or as a limited partner Class member.[7]

### A. ERG as a Member of the Oversight Committee

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well-settled." *Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (1988); *accord Magicsilk Corp. v. Vinson,* 924 F.2d 123, 125 (7th Cir.1991); *Bense v. Starling,* 719 F.2d 241, 244 (7th Cir.1983). In most cases, this "means parties of record at the time the judgment was entered, including such as have become parties by intervention, substitution or third-party practice." 9 *Moore's Federal Practice* ¶ 203.06 (2d ed. 1985). In its jurisdictional statement filed pursuant to Circuit Rule 28(b), ERG stated that it was appealing "as a member of the Oversight Committee." (Jurisdictional Statement of Appellant Equity Resources Group, Inc., filed October 29, 1991, at 1.) Noting that the "Oversight Committee" was not a party to the class action, this court issued an order on October 31, 1991 directing ERG, VMS and Class Counsel to respond to the following question:

> Whether a member of the Oversight Committee, not a party to the action below, has standing to appeal orders of the District Court?

After considering the responses from VMS, ERG and Class Counsel, we conclude that despite ERG's involvement and interest in this case, it has no right to appeal as a member of the Oversight Committee.

The Memorandum of Understanding bestowed on ERG, as a member of the Oversight Committee, authority commensurate with that of the Oversight Committee itself; we agree with Class Counsel, however, that the origin and nature of the Oversight Committee reveal that it is not a party in the Class Action. A creature of the Settlement Agreement, it was devised to compensate Class members for giving irrevocable proxies to the managing partner of each Settling Limited Partnership. Instead of allowing the managing partners to unilaterally deem that a property sale is in order, the parties agreed (with the approval of the district court) to a mechanism for review of each sale. The Oversight Committee can examine a proposed sale and challenge, "in a proceeding before the *Court,*" the inadequacy of the consideration being paid or other business considerations deemed appropriate by the Oversight Committee. The Settlement Agreement specifically defined "Court" as the "District Court for the Northern District of Illinois." In effect, then, the Oversight Committee comes before the district court not as a party but as a court-appointed expert to assist the court in implementing and enforcing the Settlement Agreement. The Class remains the party whose interests are at stake, and the named plaintiffs represented by Class Counsel remain the formal representatives of the Class.

As a non-party, the Oversight Committee's participation in the proceedings challenging the sale of the Lynnhaven properties does not confer upon it the right to appeal the resulting order. Some courts

---

whether VMS has in fact met its burden." (Tr. 10/22/91 at 25.) He further stated that his decision would not constitute an affirmative finding that VMS had discharged its burden. However, Judge Zagel indicated that "there is at least in theory a situation in which a transaction can be shown to be so terrible, so indefensible in light of concrete alternatives, that it is apparent to everyone that under the particular circumstances VMS could not possibly have [been] said to [have] discharge[d] its duties to the limited partners." (Tr. 10/22/91 at 27.) However, under the particular circumstances Judge Zagel

thought that VMS had made a "good faith effort to discharge their duties to the limited partners" and denied reconsideration.

7. VMS has notified us that the property at issue in this appeal has been sold to an independent third-party purchaser and asks us to dismiss this appeal as moot. We need not address this question because, since we conclude that ERG lacks appellate standing, we have no jurisdiction over the appeal.

have regarded a non-party's participation in the proceedings below as well as the equities of the case in assessing a non-party's right to appeal. *See, e.g., United States v. Conforte,* 643 F.2d 641, 643 (9th Cir.1981) (concluding that in nearly every case where a non-party appeal is allowed, the appellant participated in the district court proceedings and the equities of the case weighed in favor of hearing the appeal). But where, as here, the court's order does not impose any requirements on the non-party Oversight Committee, the Oversight Committee's participation in the proceedings below is an insufficient basis for obtaining appellate review. *See Coffey v. Whirlpool Corp.,* 591 F.2d 618, 619 (10th Cir.1979) (where insurer was not formal party, it could not appeal court's denial of insured's motion to vacate order of dismissal and to amend complaint to substitute insurer as the plaintiff); *cf. Brown v. Board of Bar Examiners,* 623 F.2d 605, 608 (9th Cir. 1980) (although appellants had been dismissed from the suit, court allowed their appeal since district court had granted specific relief against them).

## B. ERG As a Limited Partner

■ As an alternative basis for its right to appeal, ERG points out that as a Lynnhaven limited partner, it stands to lose its entire partnership interest as a result of the district court's order refusing to enjoin the disposition of the Lynnhaven property. (Supp.Juris.Mem. ERG, filed Nov. 12, 1991, at 8.) Furthermore, ERG argues that as a limited partner and "spokesman protection groups" that include "a large number of other limited partner class members" (Supp.Juris.Mem. ERG, filed Nov. 12, 1991, at 3), its interest extends beyond Lynnhaven since the decision in this case will directly impact the types of dispositions that will likely be proposed in the future. These interests, however, are insufficient to confer on ERG a right to appeal.

In spite of its interest and participation in this Class Action prior to and after settlement, ERG was not a named plaintiff in the Class Action; ERG's posture as an unnamed Class member curtails its right to appeal. We have found no cases addressing this specific issue in this or any other circuit, and the parties have not cited any. But the reasoning in recent class action cases in other circuits informs our analysis.

An appeal at any stage of a class action spawns issues not generated in other contexts. Several circuits, including this one, have addressed the issue of whether an unnamed class member can appeal the district court's approval of a consent decree and have reached conflicting conclusions. In *Research Corp. v. Asgrow Seed Co.,* 425 F.2d 1059 (7th Cir.1970), appellants were unnamed members of the defendant class who received notice of various hearings in the settlement negotiation process, notice of a proposed settlement in compliance with Fed.R.Civ.P. 23(e) and notice of a fairness hearing but had not raised any objection to the consent judgment and took no action until after the settlement had been approved. This court dismissed the appeal but stated that if an unnamed class member intervenes or even appears in response to a notice pursuant to Fed.R.Civ.P. 23(e) and objects to the dismissal or compromise, he has a right to appeal from an adverse final judgment. *Id.* at 1060; *accord Armstrong v. Board of School Directors,* 616 F.2d 305, 327 (7th Cir.1980). Likewise, the Ninth Circuit seems to take the view that if appellants have a legal right affected by the settlement, they have a right to appeal the approval of the consent decree. *See Marshall v. Holiday Magic,* 550 F.2d 1173, 1176 (9th Cir.1977) (appellants fell into defendant class and even though they did not appear at the fairness hearing, the court determined they had a right to appeal). Some circuits have allowed appeal by unnamed class members without addressing the issue of the right to appeal. *See Croyden Assoc. v. Alleco, Inc.,* 969 F.2d 675 (8th Cir.1992) (collecting cases).

The more recent cases have taken a different tack in addressing this issue and followed the Eleventh Circuit's reasoning in *Guthrie v. Evans,* 815 F.2d 626, 628 (11th Cir.1987), which concluded that a class member who is not a named plaintiff does not have a right to appeal a final judgment in a class action. *Accord Croy-*

*den Assoc.,* 969 F.2d at 679 (noting the split in the circuits but finding *Guthrie*'s reasoning persuasive); *Walker v. City of Mesquite,* 858 F.2d 1071 (5th Cir.1988). *Guthrie* gave three reasons for concluding a class member who is not a named plaintiff does not have a right to appeal the final judgment in a class action. First, unnamed individuals cannot represent the class absent the procedures in Fed.R.Civ.P. 23. Second, class members who disagree with the course of a class action can avail themselves of other procedures to protect their interests. Third, class actions would be unmanageable and non-productive if each member could decide to appeal individually. *Guthrie,* 815 F.2d at 628.

*Research Corp.* would control in this circuit if ERG were appealing the approval of the settlement agreement (which it did not do), but for three reasons we find *Guthrie*'s analysis persuasive where an unnamed class member like ERG is appealing a post-settlement order implementing the settlement agreement.[8] First, ERG represents only its own interests in its appeal—which apparently do not coincide with the interests of the Class since Class Counsel favored the sale and has not appealed the district court's order. Even if ERG represents "protection groups" as it asserts in its jurisdictional memorandum, the district court has not scrutinized ERG to determine if it fairly and adequately would protect the interests of the class as required for representative parties under Fed.R.Civ.P. 23(a). *Cf. id.* at 628.[9]

Second, allowing ERG or other unnamed class members to directly appeal each of the district court's orders approving a sale would wholly thwart the purpose behind class actions. This Class Action was designed to render manageable the Consolidated Actions which would otherwise have been unwieldy because of the number of class members. *Cf. Guthrie,* 815 F.2d at 629. This is only the first sale initiated since the Class entered the Settlement Agreement that provided the mechanism for selling real estate in which limited partners invested over one billion dollars. The settlement in this class action will completely unravel if the thousands of unnamed Class members are free to descend on this court to challenge each sale approved by the district court. Now that the consent decree has been issued and unnamed Class members have waived their opportunity to appeal it, the interest of the Class in proceeding to implement the settlement precludes a countermarch at the behest of an unnamed class member representing its own interests.

Third, ERG may have alternative avenues of relief if it thinks its interests are

---

8. While no case in this circuit has disavowed *Research Corp.,* a panel of this circuit noted the line of authority represented by *Guthrie* and its progeny in *Bash v. Firstmark Standard Life Ins. Co.,* 861 F.2d 159, 164 (7th Cir.1988). In *Bash,* unnamed class members appealed the district court's grant of partial summary judgment for the defendants and its subsequent approval of a settlement agreement. Curiously, the disgruntled class members were represented by the same attorney who had negotiated a settlement on behalf of the class and argued for its approval in the district court. This court rejected the defendants' motion to dismiss the appeal because of the improper conduct of the attorney, *id.* at 162, but then concluded that the unnamed class members' appeal lacked merit. *Id.* at 162–64. Subsequently, this court rejected a petition for rehearing but observed that neither party had invoked the principle of *Guthrie.* However, the court noted that "[t]he application of the principle of [*Guthrie*] would have no practical consequences in the present case, and we therefore shall not offer an opinion on the merit of the principle." *Id.*

Likewise, we offer no opinion on the merit of *Guthrie*'s principle as applied to an unnamed class member who appeals the approval of a consent decree. That is not the issue in this case, and furthermore, *Research Corp.* still controls that issue in this circuit. We are drawing on *Guthrie*'s reasoning, however, to address the related issue of whether an unnamed class member can appeal a post-settlement order implementing the settlement agreement.

9. None of ERG's partnership interests were purchased in the initial offering and several of them were acquired after the Consolidated Actions began. ERG also solicited fees from limited partners in several partnerships in which it has an interest in order to represent the interests of those limited partners in various partnership affairs. Judge Zagel remarked that "Equity Resources stands on a slightly different footing from the other limited partners." *In the Matter of VMS Limited Partnership Securities Litigation,* 138 F.R.D. 102, 103 (N.D.Ill.1991).

not adequately represented by the Class. We need not recite the possibilities since ERG has able counsel, and we do not desire to encourage one or more avenues of alternative litigation.

Although ERG could have appealed the district court's approval of the Settlement Agreement under *Research Corp.*, we decline to expand *Research Corp.*'s holding to allow the appeal of post-judgment orders by unnamed class members. Rather, in such proceedings, we hold that an unnamed class member cannot appeal. Allowing unnamed class members' appeals after each post-settlement order would impede the implementation of the settlement agreement—which not only the named plaintiffs but unnamed class members have had an opportunity to challenge. At this stage in the proceedings, direct appeal for an unnamed class member should be foreclosed although collateral avenues of relief remain open.

### III. CONCLUSION

For the reasons set forth above, we DIS-MISS the appeal.