UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

VICTOR JOHNSON,

     Plaintiff - Appellant,

v.

MONICA RODRIGUES (OROZCO);
SEALED DEFENDANT-98-550-1;
SEALED DEFENDANT-98-550-2;
ADOPTION CENTER OF CHOICE,

     Defendants - Appellees.

No. 99-4127

ORDER
Filed October 12, 2000

Before **TACHA**, **HOLLOWAY** and **BALDOCK**, Circuit Judges.

The petition for rehearing en banc has been considered and rehearing by the panel is denied. The petition having been circulated to all active judges of the court as well as to the hearing panel, and no member of the panel, nor any active judge of the court, having requested a poll on the en banc suggestion, a rehearing en banc is denied.

The hearing panel has determined that there should be a modification of the penultimate sentence of the opinion, which appears at the bottom of page 20 and the top of page 21. It is ordered that such modification shall be made by the filing of new pages

20 and 21 of the opinion which are hereby ordered to be filed by the clerk.

Entered for the Court

Patrick Fisher, Clerk of Court

By:
    Keith Nelson
    Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**AUG 28 2000**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VICTOR JOHNSON,

      Plaintiff - Appellant,

v.

MONICA RODRIGUES (OROZCO);
SEALED DEFENDANT-98-550-1;
SEALED DEFENDANT-98-550-2;
ADOPTION CENTER OF CHOICE,

      Defendants - Appellees.

No. 99-4127

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 98-CV-550-C)**

---

C. Robert Collins, Phoenix, Arizona for Appellant.

Constance K. Lundberg, Brigham Young University Law School, Provo, Utah, and Karra J. Porter, Christensen & Jensen, P.C., Salt Lake City, Utah, (G. Murray Snow, Osborn Maledon, P.A., Phoenix, Arizona, and Jay E. Jensen, Christensen & Jensen, P.C., Salt Lake City, Utah, with them on the brief) for Appellees.

---

Before **TACHA**, **HOLLOWAY** and **BALDOCK**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Plaintiff Victor Johnson (Plaintiff) brought this action under federal question jurisdiction and as a diversity case, seeking declaratory relief and citing 28 U.S.C. § §1331 and 1332 (a) (1) and the declaratory judgment act. He asserted that Utah's adoption statutes unconstitutionally denied him -- the purported father of a child whose adoption had been obtained in Utah -- notice and an opportunity to be heard. Plaintiff also asserted a claim for intentional infliction of emotional distress against defendant Monica Rodrigues, alleged to be the child's mother, and the Adoption Center of Choice (Defendants). Defendants Adoption Center of Choice and Defendants adoptive parents, who were joined as defendants, moved to dismiss Plaintiff's action or in the alternative for summary judgment, arguing that the district court lacked subject matter jurisdiction under the Rooker-Feldman doctrine.[1] See District of Columbia Court of Appeals v. Rooker-Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923).

The district court granted Defendants' motions.[2] Plaintiff timely appeals. We

---

[1] During a hearing on motions on May 7, 1999 in the district court, App. 74, 78, the judge ordered that a copy of the decree for adoption, which the adoptive parents attached to their pleadings, be sealed. That order was not challenged below and no issue about the sealing order is raised on appeal. Id. at 78. We treat that decree and the identities of the adoptive parents to be concealed as ordered below.

[2] The district court stated various grounds for granting Defendants' motion for summary judgment or motion to dismiss. See App. at 68 ("[F]or the reasons [orally] set forth at the close of the hearing, the court finds that it lacks subject matter jurisdiction and dismisses plaintiff's complaint. Therefore, defendant Adoption Center of Choice's motion for summary judgment or abstention is GRANTED, defendants [unnamed adoptive parents] motion to dismiss or for summary judgment is GRANTED. . . .").

have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  For reasons that follow we affirm in part, reverse in part, and remand for further proceedings.

# I

The case began in the United States District Court for the District of Utah where Plaintiff Victor Johnson filed his complaint against Monica Rodrigues (Orozco), an unnamed Utah husband and wife, and a Utah adoption agency, Adoption Center of Choice.  App. at 11-12.  The complaint averred that jurisdiction lies under the diversity statute, 28 USC § 1332, the federal question statute, 28 USC § 1331, and the declaratory judgment act.  The complaint alleges that the issues relate to the Due Process Clause of the United States Constitution and that the Plaintiff challenges the constitutionality of the adoption statutes of the State of Utah as they apply to a non-resident of Utah, here a resident of the State of Arizona.  App. at 11.  The complaint alleges also the Plaintiff's residence to be in Phoenix and that his domicile is Arizona.  It avers that the residence of Defendant Monica Rodrigues (Orozco) was unknown but that her last known address was in Orem, Utah and Plaintiff also alleged it was his belief that Defendant Rodrigues remains in a state other than Arizona or Utah.  App. at 12.  It was averred also that an unnamed adoptive husband and wife are Defendants who have been residents of Utah during all material times and that the Defendant Adoption Center of Choice is a Utah

adoption agency with its principal place of business in Orem, Utah.

The complaint further alleged that Plaintiff and Defendant Rodrigues conceived a child in Arizona, referred to as "Baby Orozco," who was born at the Orem Community Hospital in Orem, Utah; and that Defendant Rodrigues had previously informed Plaintiff that she was pregnant but had had an abortion during her first trimester. App. at 12-13. In discussions with Defendant Rodrigues' friends on about May 1, 1997, Plaintiff learned that he may be the father of a daughter by Defendant Rodrigues. Plaintiff therefore filed a petition in the Maricopa County, Arizona, Superior Court for determination of paternity and custody. That court ordered Defendant Rodrigues and Baby Orozco to submit to DNA testing.

The complaint stated that on June 16, 1997, Plaintiff was informed that Baby Orozco was in Utah and that Plaintiff was required by Utah law to be registered with the Utah State Register of Vital Statistics, which Plaintiff immediately did. The complaint averred that a commissioner of the Maricopa County Superior Court in Arizona made findings that Defendant Rodrigues gave birth to a baby girl on March 5, 1997 in Utah; that the father had made several attempts to gain information about the minor child, believed to be the child of Plaintiff because of an intimate relationship the parties had during the time of conception; and that the possibility of an adoption of the minor by Plaintiff was creating difficulty for Plaintiff in obtaining any information regarding the child. App. at 13.

4

By use of a Utah subpoena, Plaintiff obtained records which made it appear there was a pending adoption proceeding in Utah for Baby Orozco,[3] but Plaintiff alleges he was unable to learn about the court case number or the judge involved. App. at 14. The medical records contained documents for "authorization for release of a child to a Designated Person." The person to whom the child was released was an employee of Defendant Adoption Center of Choice. The Center received court orders sent by Federal Express regarding the child which contained a letter from Defendants, the adoptive husband and wife. Plaintiff called Defendant Adoption Center of Choice and spoke with a "Rosemary" about the adoption; she indicated nothing could be done and that further information would not be provided, according to the complaint.

The Arizona statutes involved are alleged to be Ariz. Rev. Stat. § 25-401, et seq. App. at 18. The complaint stated that the relevant adoption statutes of Utah are Utah Code Ann., § 78-30-4.11 et seq. It was alleged that the latter statute, as applied or on its face, without due process of law deprived Plaintiff of his fundamental right to maintain a parent-child relationship in that the statute does not require the mother to produce the name of a possible father. It was averred that a due process violation occurred also

---

[3] Defendants adoptive parents' counsel made arguments at the motion hearing of May 7, 1999 contradicting Plaintiffs Johnson's averments about his inability to pursue his rights. In making her jurisdictional dismissal ruling, the district judge made no factual findings on these conflicting positions. Counsel argued that Plaintiff could have filed a petition to intervene in the Utah adoption proceeding for three months before the adoption became final. App. at 89. In our review of the dismissal of the complaint, we must view the complaint's allegations in the light most favorable to Plaintiff Johnson, as noted below.

because once "actual notice of the father's right is given to the adoption agency there is no duty on the adoption agency as agent for the adoptive parents to disclose information or [provide] notice of the proceedings to the father." In connection with this alleged violation of Plaintiff's rights, the complaint cites the "Kidnapping Act 28 U.S.C. § 1738." App. at 21-22.

The complaint also alleged a cause of action for intentional infliction of emotional distress. The Plaintiff requested relief to enforce the Arizona court orders, to command Defendants to produce the baby for DNA testing, to return the baby to plaintiff, to declare void the decree of adoption issued by the Utah courts, and to "declare the Utah State Adoption Laws invalid," inter alia. App. at 23.

Defendant Adoption Center of Choice moved for summary judgment or abstention. App. at 44-45. Defendants, the adoptive parents, moved for dismissal of the complaint and also joined in the motion for summary judgment submitted by the co-defendant, Adoption Center of Choice. App. at 46-47. An order of the District Judge, following a hearing on several motions, stated that Defendant Monica Rodrigues did not appear. App. at 67-68. That order of May 11, 1999 stated that the court found it lacked subject matter jurisdiction and dismissed the Plaintiff's complaint, stating that the Adoption Center of Choice's motion for summary judgment or abstention was granted, the unnamed adoptive parents' motion to dismiss or for summary judgment was granted, and Plaintiff's motion for partial summary judgment was denied. App. at 68.

6

At the hearing which resulted in that May 11, 1999 order, the District Judge stated she was going to dismiss the case because she concluded she did not have subject matter jurisdiction; that the Plaintiff's remedy when challenging an adoption in the state court system was to bring an action in the state court for some sort of collateral relief, either alleging fraud or, as the judge understood it, the unconstitutionality of the statute; and that under Anderson v. Colorado, 793 F.2d 262 (10th Cir. 1986), federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review. The judge said that the Plaintiff's claims were essentially seeking to undo the adoption decision of the Utah state court, and therefore his case "fits squarely within the parameters of the Doe-Feldman doctrine which prohibits me, a federal district court, from reviewing the state court judgment." App. at 93-94.

Plaintiff Johnson filed a notice of appeal from the judgment of May 17, 1999 dismissing his complaint for lack of subject matter jurisdiction. App. at 70-71.

## II

Whether the district court had subject matter jurisdiction is a legal question which we review de novo. See Sac and Fox Nation of Missouri v. Pierce, 213 F.3d 566, 571 (10th Cir. 2000) ("The district court's determination of subject matter jurisdiction is a question of law which we review de novo.").

Title 28 U.S.C. § 1331 vests the federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28

7

U.S.C. § 1332 (a) provides that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1257, in turn, provides that "final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari."  Because these jurisdictional statutes provide for appellate review of state court decisions, like the one in question here, in the United States Supreme Court, the statutes prevent a federal district court from entertaining a challenge to a state court's judgment, see Rooker, 263 U.S. at 415-16, or a challenge that is "inextricably intertwined" with such a judgment.  See Feldman, 460 U.S. at 486-87.

Plaintiff argues that he is not seeking appellate review of the state court's decision, pointing out that he was not a party to the adoption proceeding in Utah.  See Appellant's Brief in Chief at 9.  He argues that he requested information from Appellees so that he could become a party; that the Appellees "stonewalled" Plaintiff following that request; and that the parties to this appeal have never litigated to final judgment any of the issues raised in the instant complaint in the District Court; and therefore that court could not act as an appellate court.  Id.  In the posture of the case as it comes to us, we must accept these averments.  We are reviewing a dismissal and must read the complaint liberally, construing all reasonable allegations in the Plaintiff's favor.  Skrzypczak v. Kauger, 92 F.3d 1050, 1053 (10th Cir. 1996).  As the Supreme Court has long instructed us, "a

8

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief . . ." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote and citations therein omitted). Essentially the same review must be given to the decision, viewed as a summary judgment. McGarry v. Bd. of County Comm'rs of Pitkin County, 175 F.3d 1193, 1198 (10th Cir. 1999).

We are persuaded that the district court erred in dismissing Plaintiff Johnson's complaint under the Rooker-Feldman doctrine for two basic reasons. First, he was not a party to the state court adoption proceeding, a fact which makes the doctrine inapplicable. And, second, Plaintiff's discrete general challenge to the validity of the Utah adoption laws must be considered, thus distinguishing this case from one challenging the merits of a particular state court ruling. Under the Rooker-Feldman doctrine, federal district courts

> have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U.S.C. § 1257.

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983).

The Court's opinion in Feldman noted specifically that our court in Doe v. Pringle, 550 F.2d 596, 597 (10th Cir. 1976), had correctly focused on the nature of a suit seeking review of a state court's ruling on a particular application for admission to the bar, where

9

jurisdiction is lacking and review must be sought in the Supreme Court. On the other hand, the federal district courts <u>do</u> have jurisdiction "<u>over general challenges to state bar rules</u>, promulgated by state courts in nonjudicial proceedings, <u>which do not require review of a final state court judgment in a particular case</u>." <u>Feldman</u> 460 U.S. at 486 (emphasis added). We are convinced that under this principle the federal district court in the instant suit <u>did</u> have jurisdiction over the discrete portion of Plaintiff Johnson's complaint herein in which he made a general challenge to the Utah adoption laws and separately asked that the district court "Declare the Utah State Adoption laws invalid." Complaint, ¶ X-G, App. at 24. The latter portion of Plaintiff's case comes within the distinction clearly noted in <u>Doe v. Pringle</u>, 550 F.2d at 599, that "a federal district court may exercise review of alleged federal constitutional due process or equal protection deprivations in the state's adoption and/or administration of general rules governing admission." Thus in light of the general challenge by Plaintiff Johnson to the Utah Adoption laws it was error to dismiss Plaintiff's complaint <u>in</u> <u>toto</u> since that portion of his complaint need not be construed as an attempt to appeal a particular adoption decree.

There is the second ground mentioned earlier which bars application of the <u>Rooker-Feldman</u> doctrine here -- namely the admitted fact that Plaintiff Johnson was not a party to the Utah Adoption proceeding which the Defendants say he seeks to collaterally attack. Plaintiff Johnson objected below on this ground to application of the <u>Rooker-Feldman</u> doctrine, his counsel stating: "First off, Mr. Johnson was not a party to that

[state court] action." App. at 81. Construing the complaint before the District Judge as we must, we agree with Plaintiff that the Rooker-Feldman doctrine was not applicable here for this reason. The complaint's allegations and this record in no way show that Plaintiff was a party to the proceedings in Utah. To the contrary, the allegations before the District Court here, which must be accepted at this juncture in reviewing a dismissal, were instead that Plaintiff sought information to assert his rights and was told on September 24, 1997 by the Adoption Center's Director that the adoption had become final that day and that "there was nothing Plaintiff could do." App. at 14-15.

This makes instructive the Supreme Court's decision in Johnson v. De Grandy, 512 U.S. 997 (1994). There the Florida Supreme Court had declared constitutional Florida's reapportionment of house districts based on the 1990 census. See id. at 1001. The United States did not participate in the state proceeding. After the Florida Supreme Court's decision, the United States filed an action in the federal district court challenging Florida's redistricting plan. See id. at 1002. Florida argued that the Rooker-Feldman doctrine barred the United States' federal action. See id. at 1005. The Supreme Court rejected the argument:

> [The State] contends . . . that the Federal Government's § 2 challenge deserved dismissal under this Court's Rooker/Feldman abstention doctrine, under which a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. . .but the invocation of Rooker/Feldman is just as inapt here, for unlike Rooker or Feldman, the United States was not a party in the state court. . . . The United States

11

merely seeks to litigate its § 2 case for the first time, and the Government's claims, like those of the private plaintiffs, are properly before the federal courts.

Id. at 1005-06 (emphasis added) (citations omitted).

As Johnson teaches, the Rooker-Feldman doctrine should not be applied against non-parties. Other circuits have thus construed Johnson. See Gross v. Weingarten, 217 F.3d 208, 218 n.6 (4th Cir. 2000) (citing Johnson, 512 U.S. at 1005-06, and holding that "Rooker-Feldman does not apply, however, when the person asserting the claim in the federal suit was not a party to the state proceeding"); Bennett v. Yoshina, 140 F.3d 1218, 1224 (9th Cir. 1998) (citing Johnson, 512 U.S. at 1005-06, and holding that "since the new plaintiffs were not parties to the state suit, their suit is not barred by the Rooker/Feldman doctrine"); Kamilewicz v. Bank of Boston Corp., 100 F.3d 1348, 1351 (7th Cir. 1996) (citing Johnson, 512 U.S. at 1005-06, and holding that "[w]e, too, have held that the Rooker-Feldman doctrine does not affect suits by or against persons who were not parties to the initial case"); Roe v. Alabama, 43 F.3d 574, 580 (11th Cir. 1995) (citing Johnson, 512 U.S. at 1005-06, and holding that the Rooker-Feldman doctrine did not bar the action because "the plaintiffs in this case [were] not, by the admission of all parties, parties to [the state action]. The Rooker-Feldman doctrine does not apply to such circumstances"); see also E.B. v. Verniero, 119 F.3d 1077, 1092 (3d Cir. 1997) ("Rooker-Feldman does not bar individual constitutional claims by persons not parties to the earlier state court litigation."); United States v. Owens, 54 F.3d 271, 274 (6th Cir. 1995) ("The

12

Rooker-Feldman doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court").

We are convinced that the Rooker-Feldman doctrine does not bar a federal action when the plaintiff, as here, lacked a reasonable opportunity to litigate claims in the state court. See Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997) ("The Rooker-Feldman doctrine applies as long as the party had a reasonable opportunity to raise his federal claims in the state court proceedings. If the party had no reasonable opportunity, this court considers that the federal claim was not inextricably intertwined with the state court's judgment.") (citation and internal quotation marks omitted); Ernst v. Child & Youth Services of Chester County, 108 F.3d 486, 492 (3d Cir. 1997) (same); Moccio v. New York State Office of Court Admin., 95 F.3d 195, 199, 202 (2d Cir. 1996) (same); Guess v. Bd. of Med. Exam'rs of North Carolina, 967 F.2d 998, 1004 (4th Cir. 1992) (similar). A person would ordinarily lack a reasonable opportunity to litigate claims in an action in which the person was not a party. See Owens, 54 F.3d at 274 ("A person who was not a party in the state court action did not have an opportunity to litigate its claims. That person must be allowed to bring an action in federal court to attempt to vindicate its perceived rights. . . ."); Roe, 43 F.3d at 580 ("[B]ecause the plaintiffs are not parties to [the state court action], the plaintiffs had no opportunity to raise their constitutional claims in [state court]. . .").

What we have said disposes of Defendant's arguments premised on Anderson v.

13

Colorado, 793 F.2d 262 (10th Cir. 1986). There we noted the distinction drawn in <u>Doe v. Pringle</u>, 550 F.2d at 597, between general challenges to state bar admission rules and claims that a state court unlawfully denied a particular applicant admission. Finding a father's § 1983 suit could not be used to undo a particular Colorado custody decision, we invoked the <u>Doe-Feldman</u> doctrine, affirming dismissal of Anderson's suit. However, no argument was made that Anderson was not a party to the custody suit in question or that he did not have a reasonable opportunity in that proceeding to assert his claims. Thus <u>Anderson</u> was a critically different case and that ruling offers no support for the Defendants here.

Accordingly, the district court erred by dismissing Plaintiff's action under the <u>Rooker-Feldman</u> doctrine.

## III

We turn now to alternative grounds which Defendants press for upholding the dismissal of Plaintiff's complaint. In addition to relying on the <u>Rooker-Feldman</u> doctrine, the Defendants also argue that the "Abstention Doctrine" nullifies any potential federal jurisdiction to determine custody of a minor, relying on <u>Ankenbrandt v. Richards</u>, 504 U.S. 689 (1992). <u>See</u> Brief of Appellees at 8-10. Citing a portion of the <u>Ankenbrandt</u> opinion, <u>id</u>. at 703, Defendants point to the Court's statements in <u>In re Burrus</u>, 136 U.S. 586, 594 (1890), on "the whole subject of the domestic relations of husband and wife, parent and child. . . " as belonging to the laws of the States and not to the laws of the

14

United States. Defendants point out that Ankenbrandt noted that this language has been interpreted to apply with equal vigor to diversity jurisdiction cases, although Burrus technically did not involve construction of the diversity statute. Ankenbrandt at 703. From the language in the cases, Defendants maintain that the domestic relations exception bars the federal courts from determining the custody of a minor. Defendants' argument is made broadly without any distinction between exercising diversity or federal question jurisdiction.[4]

While the domestic relations exception was argued below, App. at 90, neither that exception nor abstention in any context was relied on in the judge's oral or written rulings. Nevertheless we feel that we can and should consider these matters. See Morrow v. Winslow, 94 F.3d 1386, 1391-92 (10th Cir. 1996) (so holding as to abstention); Sanchez v. Pacific Powder Co., 147 F.3d 1097, 1100 (9th Cir. 1998) (so holding for jurisdictional issues).

## A

Ankenbrandt explains the historical origin of the domestic relations exception to diversity jurisdiction, a principle which dates to the Supreme Court's 1859 decision in Barber v. Barber, 21 How. at 582 (1859), stating:

---

[4] Some district courts in the Second Circuit have applied the domestic relations exception in federal question cases, but other Circuits have held that the exception is limited to diversity suits. See Wright & Miller, Federal Practice and Procedure, § 3609, n.4.2. The parties have not addressed this distinction and we do not feel it advisable or necessary in our disposition of the instant case to do so.

Although <u>In re Burrus</u> [136 U.S. 586 (1890)] technically did not involve a construction of the diversity statute, as we understand <u>Barber</u> to have done, its statement that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States," <u>id</u>., at 593-594, has been interpreted by the federal courts to apply with equal vigor in suits brought pursuant to diversity jurisdiction.

. . .

This application is consistent with <u>Barber</u>'s directive to limit federal courts' exercise of diversity jurisdiction over suits for divorce and alimony decrees. See <u>Barber</u>, <u>supra</u>, at 584. . .We conclude, therefore, that the domestic relations exception, as articulated by this Court since <u>Barber</u>, divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders.

<u>Ankenbrandt</u>, 504 U.S. at 703.

In his complaint Plaintiff Johnson asks that the district court "[i]ssue an immediate injunction commanding Defendants to return Baby Orozco to Plaintiff." App. at 23. The domestic relations exception plainly bars the district court from granting that relief in exercising diversity jurisdiction. However, despite the unavailability of that remedy in exercising diversity jurisdiction, Plaintiff's underlying claims making a general challenge to the constitutionality of the Utah adoption statutory scheme, and alleging a due process violation, must be considered in the context of federal question jurisdiction which is also asserted.

Plaintiff's constitutional claim alleges that Utah's adoption statutes unconstitutionally denied him notice and an opportunity to be heard. That claim does not

16

require the district court to make a child custody determination. In fact, if the federal district court determines that the Utah statutes are unconstitutional, then the parties could return to the state court for new proceedings about custody and the request for adoption. Because Plaintiff's constitutional challenge to the Utah statutes does not require the federal district court to make a custody determination, that claim does not fall within the domestic relations exception even if the exception applies to proceedings involving an exercise of federal question jurisdiction.

Plaintiff's complaint also alleges that Defendants' efforts to remove Baby Orozco from Arizona and to prevent Plaintiff from intervening in the state court action constitute intentional infliction of emotional distress. The Supreme Court in Ankenbrandt made clear that such tort claims do not fall within the domestic relations exception: "[T]he domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree. . . . This lawsuit in no way seeks such a decree; rather, it alleges that respondents Richards and Kesler committed torts against L.R. and S.R., Ankenbrandt's children by Richards. Federal subject-matter jurisdiction pursuant to § 1332 thus is proper in this case." Id.

Accordingly, neither Plaintiff's constitutional claim challenging the Utah adoption laws nor his tort claim fall within the domestic relations exception. These claims should be considered and decided on remand by the district court.

**B**

17

Even though the domestic relations exception does not bar Plaintiff's underlying claims, "the abstention principles developed in <u>Burford v. Sun Oil</u> , 319 U.S. 315 (1943), might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody. This would be so when a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." <u>Ankenbrandt</u>, 504 U.S. at 705-06 (citations and quotation marks omitted). However, such a case would likely occur when "the suit depended on a determination of the status of the parties." <u>Id</u>.

Plaintiff's constitutional claim for the Utah adoption statutory scheme to be held invalid does not depend on the status of the parties (<u>i.e.</u>, the custody determination). Moreover, Plaintiff's constitutional claim does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar." Plaintiff's constitutional claim instead requires the district court to determine whether a Utah statute violates Plaintiff's federal constitutional rights. Plaintiff's claim therefore only asks the district court to act within its area of expertise, rather than to invade the province of the State. Accordingly, <u>Burford</u> abstention and related theories do not call for avoiding a decision on the Plaintiff's constitutional claim for invalidation of the Utah Adoption statutes. The constitutional claim should be considered and decided on remand.

Plaintiff's tort claim requires the district court to determine whether Defendants'

18

efforts as alleged to remove Baby Orozco from Arizona and to refuse to inform Plaintiff Johnson about the adoption proceeding amounted to intentional infliction of emotion distress. Like the constitutional claim, the tort claim does not depend on the status of the parties. Moreover, the tort claim does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." Instead, the claim requires a determination whether Defendants' conduct was tortious. See, e.g., Ankenbrandt, 504 U.S. at 706 ("Where, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying tort alleged, we have no difficulty concluding that Burford abstention is inappropriate in this case."). Accordingly, abstention does not apply to Plaintiff Johnson's tort claim for intentional infliction of emotional distress.

Finally, we must consider another question about the request of Plaintiff Johnson that the district court "[i]ssue an immediate injunction commanding Defendants to return Baby Orozco to Plaintiff." App. at 23. With respect to consideration of that request in the context of exercising diversity jurisdiction, we earlier held that the domestic relations exception bars the district court from granting that relief. In the context of federal question jurisdiction we feel that consideration of this request for an injunctive order for return of Baby Orozco must be deferred until the validity of the Utah adoption statute as applied here is determined by the District Court on remand. If the Utah adoption law and its application here should be held invalid, of course the federal district court should not

19

undertake the making of any custody or adoption ruling. Those matters instead would be within the jurisdiction and expertise of the Utah courts. If the Utah procedure and its application here are held valid, then the existing adoption order would of course not be disturbed.

## IV

The district court erred in holding that the <u>Rooker-Feldman</u> doctrine bars Plaintiff's claims and in dismissing Plaintiff Johnson's complaint on that basis. Although the domestic relations exception bars one of Plaintiff's proposed remedies in connection with the exercise of diversity jurisdiction – awarding custody of Baby Orozco to him – Plaintiff's general constitutional challenge to the Utah adoption law and his tort claims do not fall within the domestic relations exception. Moreover, the abstention doctrine should not be applied to Plaintiff's constitutional claims. Accordingly, the district court erred by dismissing Plaintiff's claim seeking a determination of invalidity of the Utah adoption laws. The district court should determine the validity of the adoption procedure on remand; as Part III provides, <u>supra</u>, if the adoption law and its application here should be held invalid, the making of any custody or adoption ruling concerning Baby Orozco should be left to the jurisdiction and expertise of the Utah courts.

Accordingly, the decision is affirmed in part, reversed in part, and the case is remanded for further proceedings in accord with this opinion.

20