Alan BROWN, Plaintiff,

v.

Honorable Richard DAMIANI, Defendant.

No. 3:00CV1810(JBA).

United States District Court, D. Connecticut.

July 19, 2001.

Moyahoena N. Ogilvie, Patrick F. Caruso, Cummings & Lockwood, Hartford, CT, Martin B. Margulies, Hamden, CT, Philip D. Tegeler, Hartford, CT, for Plaintiff.

Eliot D. Prescott, Karla A. Turekian, Attorney General's Office, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION

ARTERTON, District Judge.

This interesting First Amendment case involves the balance between the public's right of access to the courts and the competing concern for confidentiality in juvenile proceedings. Plaintiff Alan Brown, a self-described "internet human rights reporter" for "Digital Freedom Network," an internet publication out of Newark, New Jersey, challenges the constitutionality of an order issued by a Connecticut Superior Court judge in a habeas corpus proceeding in juvenile court prohibiting the parties from discussing any aspect of the case with

the media, and threatening the pre-adoptive mother in that action (referred to as "Ms. B." or "Therese B." in the Complaint) with six months jail time for contempt of court if she did not remove certain pictures and postings from the Internet. The mother has appealed Judge Damiani's order and contempt finding to the Connecticut Appellate Court. Mr. Brown, who testified as a witness in the underlying action, was not a party and was not bound by the gag order. He brings this federal court § 1983 action seeking a declaration that the order violated his First Amendment rights.

### Discussion

Defendant Damiani, who is sued in his official capacity only, seeks dismissal of the one-count complaint against him, arguing that Brown lacks standing, and that both *Younger* abstention and the *Rooker–Feldman* doctrine require this Court to abstain from deciding the constitutionality of Judge Damiani's order, pending resolution of Ms. B.'s state court appeal.

### A. *Standing*

■ "The doctrine of standing incorporates both constitutional and prudential limitations on federal court jurisdiction . . . ." *Lamont v. Woods,* 948 F.2d 825, 829 (2d Cir.1991); *accord Comer v. Cisneros,* 37 F.3d 775, 787 (2d Cir.1994). The constitutional dimension derives from the "case or controversy" requirement of Article III, *see Sullivan v. Syracuse Hous. Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992), and requires the party invoking the power of a federal court to have at least a "personal stake in the outcome of the controversy." *Wight v.*

*Bankamerica Corp.,* 219 F.3d 79, 86 (2d Cir.2000), *quoting Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Defendant contends that the standing doctrine requires dismissal of plaintiff's § 1983 action, because Brown has not alleged that he was bound by Judge Damiani's gag order,[1] but instead only alleges that Ms. B. and her attorneys were prohibited from making any statements about the case to third parties under the order, discontinuing Ms. B.'s contacts with him and other media sources, thus prohibiting plaintiff from reporting on the conduct of DCF and on the court proceedings ratifying DCF's actions. According to defendant, Brown has failed to adequately allege any real or immediate injury to him sufficient to support standing in this case.

■ In *Application of Dow Jones & Co., Inc.,* 842 F.2d 603 (2d Cir.1988), the Second Circuit held that news agencies had standing to challenge a gag order prohibiting participants in the trial from speaking with the media, because they were potential "recipients" of speech, even though "they are neither named in nor restrained by the order." 842 F.2d at 606. Similarly, in *Connecticut Magazine v. Moraghan,* 676 F.Supp. 38 (D.Conn. 1987), a news organization brought a § 1983 action challenging a gag order entered in a state criminal proceeding, and the late Judge Daly concluded that the organization had standing to raise its First Amendment claims, even though it was not bound by the order and did not have standing to assert the rights of those who were subject to the order. 676 F.Supp. at 40. Judge Daly relied on

---

1. The parties use different nomenclature to refer to the challenged Order of February 22, 2000. The defendant calls it the "confidentiality order," while plaintiff refers to it as a "gag order." Although the latter term may have a pejorative tinge, it is shorter, and does seem to capture the nature of Judge Damiani's ruling: that Ms. B. was prohibited from discussing the pending proceedings with the media and making any postings on the Internet regarding her case. Accordingly, the Court has adopted plaintiff's term.

cases from other circuits recognizing a First Amendment right to *gather* news, and held that "[b]ecause the gag order impairs its ability to gather news and thus implicates its [F]irst [A]mendment rights, Connecticut Magazine has standing to challenge the order despite not being a party or a subject of the order in the underlying action." *Id.* A number of other courts, relying on *Application of Dow Jones & Co.*, have similarly concluded that news organizations and citizens' advocacy groups demonstrate an injury to their First Amendment rights sufficient for standing purposes if they demonstrate that, but for the challenged order, parties to the litigation would have spoken to the news media.[2]

Defendant attempts to distinguish *Application of Dow Jones & Co.* and *Connecticut Magazine* by arguing that the underlying action in each case was a criminal matter. Neither case, however, relied on the particular nature of the proceeding to reach its conclusion. In fact, the Second Circuit in *Application of Dow Jones & Co.* noted that "First Amendment protection for recipients of speech extends to a wide variety of contexts," listing Supreme Court cases finding such a right on the part of recipients of mail from inmates, scholars who seek to hear an excluded theoretician, the public who is denied access to particular ideas through broadcast media, and even those who seek to receive communist materials or obscene publications in their homes. 842 F.2d at 607.[3] The court found as a common thread tying all of these cases together the proposition that "the First Amendment unwaveringly protects the right to receive information and ideas. A challenge by news agencies must certainly be permitted when the restrained speech ... concerns allegations of corruption by public officials in obtaining federal contracts." *Id.* The speech restrained here involves allegations of misconduct by a state agency, resulting in failure to protect children in its care, and retaliation against a potential adoptive parent for complaining about such misconduct. The reasoning of both *Dow Jones* and *Connecticut Magazine* is not limited to criminal cases, and the Court sees little difference between Mr. Brown and the plaintiff news organizations in those two cases.[4]

---

2. *See, e.g., Dow Jones & Co. v. Kaye,* 90 F.Supp.2d 1347, 1352 (S.D.Fla.2000); *Koch v. Koch Industries, Inc.,* 6 F.Supp.2d 1185, 1190 (D.Kan.1998); *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 838 (3rd Cir.1996).

3. *Citing Procunier v. Martinez,* 416 U.S. 396, 408–09, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Kleindienst v. Mandel,* 408 U.S. 753, 762–65, 92 S.Ct. 2576, 33 L.Ed.2d 683(1972); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 386–90, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542(1969); *Lamont v. Postmaster Gen.,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

4. Mr. Brown is an individual reporter, rather than a news agency or a publication, but the cases do not distinguish between the First Amendment rights of reporters and the media for whom they report. *See, e.g., KPNX Broad. Co. v. Arizona Superior Court,* 459 U.S. 1302, 103 S.Ct. 584, 74 L.Ed.2d 498 (1982) (Rehnquist, Circuit Justice) (upholding gag order in criminal case challenged by news organizations and group of reporters); *United States v. Yonkers Bd. of Educ.,* 747 F.2d 111 (2d Cir. 1984) (newspaper reporter challenged local rule prohibiting use of cassette recorders on First Amendment grounds); *United States v. Cianfrani,* 573 F.2d 835, 845 (3d Cir.1978) (intervening newsgathering organizations and reporters had standing to challenge exclusion of public from suppression hearing); *United States v. Gurney,* 558 F.2d 1202 (5th Cir.1977) (media organizations and reporters had standing to challenge order denying access to documents); *Tsokalas v. Purtill,* 756 F.Supp. 89 (D.Conn.1991) (newspaper and sketch artist employed by paper sought preliminary injunction against state court order in criminal trial).

The Court concludes that the allegations in the complaint are sufficient to support Mr. Brown's standing under the reasoning of *Application of Dow Jones*. It is apparent from the face of the complaint that Ms. B would have spoken to news outlets about her adoption battle, and to an Internet reporter in particular, given her attempts to publicize her case on various Web sites. Complaint ¶ 41; *see also Kaye*, 90 F.Supp.2d at 1352. Accordingly, Mr. Brown has standing to sue because he has alleged an injury to his First Amendment rights as a reporter that can be redressed by the relief requested—a declaration that Judge Damiani's order was unconstitutional.

### B. *Abstention*

Defendant argues that this Court should decline from deciding the merits of plaintiff's First Amendment claims until the state court proceedings brought by Ms. B. have terminated, under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The doctrine of abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). The Supreme Court has repeatedly emphasized that abstention should be invoked only rarely because federal courts have an obligation to exercise the jurisdiction conferred on them by Congress. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (collecting cases); *see also Cecos Internat'l v. Jorling*, 895 F.2d 66, 70 (2d Cir.1990) ("[F]ederal courts have an unflagging obligation to adjudicate cases brought within their jurisdiction. It is now black-letter law that abstention from the exercise of federal jurisdiction is the narrow exception, not the rule.").

*Younger* abstention implicates "principles of federalism and comity," and requires a federal court to abstain from enjoining a pending state proceeding where an important state interest is involved and the movant will have an adequate opportunity to raise his constitutional claims in the state proceedings. *See Younger*, 401 U.S. at 43–56, 91 S.Ct. 746 (denying request to enjoin pending state criminal prosecution).[5] The parties appear to agree that the first two *Younger* factors are present—there is an ongoing judicial proceeding and an admittedly important state interest is involved. The parties disagree, however, as to whether the third requirement—an adequate opportunity for judicial review of the constitutional claim in the state proceeding—has been met. Defendant argues that because Brown could have intervened in the state proceeding or obtained appellate review of Judge Damiani's order as a party or non-party, and because state courts are fully capable of protecting federal constitutional rights, he had an opportunity to present his federal claims in the state proceedings, and this Court should thus abstain. Plaintiff responds that because he is not a party to the state proceeding, abstention is not warranted.

The Supreme Court confronted the issue of under what circumstances federal and state plaintiffs should be considered the same for *Younger* purposes in *Doran v. Salem Inn*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In *Doran*, three cor-

---

**5.** *Younger* abstention has been expanded beyond the context of criminal proceedings. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (extending *Younger* to quasi-criminal proceeding brought by state to enforce obscenity statute); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (extending *Younger* to civil proceeding involving contempt charges for failure to comply with subpoena).

porations that ran topless bars, operating in the same town and represented by the same counsel, challenged a local ordinance regulating topless dancing. All three corporations filed suit in federal court, and a state criminal prosecution was instituted against one bar that resumed its presentation of topless dancing the day after a preliminary injunction was obtained. The Supreme Court held that abstention was appropriate as to that one bar, but disagreed with the Second Circuit "that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes . . . ." *Id.* at 928, 95 S.Ct. 2561. While noting that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations that govern one of them," the Court concluded that the present case was not such a case. *Id.* at 929, 95 S.Ct. 2561. "[W]hile respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed the position required by our cases as if that respondent stood alone." *Id.; see also Obeda v. Connecticut Bd. of Registration,* 570 F.Supp. 1007 (D.Conn. 1983) (examining factors of ownership, management and control to determine that state and federal plaintiffs' interests were sufficiently intertwined to warrant *Younger* abstention where federal plaintiff was

president and 95% owner of the state court litigant, and thus a form of alter ego).

The state and federal plaintiffs here are not represented by the same counsel, and while Mr. Brown and Ms. B. may share an overall antipathy for the gag order, Mr. Brown's interests are not identical to those advanced by Ms. B. in her appeal. Defendant correctly points out that Mr. Brown's rights are derivative of Ms. B.'s, in that "the press' right to receive speech does not enlarge the rights of those directly subject to the restraining order. Success on the merits for the news agencies is entirely derivative of the rights of trial participants to speak." *Application of Dow Jones & Co.,* 842 F.2d at 607.[6] That plaintiff's *rights* are derivative of Ms. B.'s does not mandate the conclusion that the *interests* they each advance in their respective litigations are identical, however.[7] For instance, if Ms. B. wins on substantive grounds and gains her ultimate objective—adoption of Baby B.—she may have less incentive to pursue her First Amendment claims, if the purpose of her speech was to pressure the Department of Children and Families into granting her that custody. The Second Circuit has also recognized that the identity of the challenger has significance to the First Amendment analysis, for "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *Application of Dow Jones & Co.,*

---

6. Other courts have agreed, holding that a speaker's and a listener's rights are coextensive. *See NAACP, Los Angeles Branch v. Jones,* 131 F.3d 1317, 1322 (9th Cir.1997) (plaintiff-voters have no greater rights as recipients of speech than do candidate-speakers), *citing In re Application of Dow Jones,* 842 F.2d at 608.

7. By way of illustration, the three plaintiffs in *Doran* had identical First Amendment rights, as they each operated a topless bar that was subject to the same local ordinance, and raised the same constitutional objections, but the Supreme Court still found that they were entitled to pursue a federal court action due to the separate nature of their ownership, management and control.

842 F.2d at 609; *see also United States v. Salameh*, 992 F.2d 445, 446–7 (2d Cir.1993) (gag order challenged by defense counsel struck down as a prior restraint).[8] Ms. B.'s state appeal may thus present different constitutional issues than Mr. Brown's federal action. As the interests of Ms. B. and Mr. Brown are discrete, despite the identity of rights, and the constitutional analysis may differ, they should not "be thrown into the same hopper for Younger purposes." *Doran*, 422 U.S. at 928, 95 S.Ct. 2561.[9]

While any ruling by the state court on Ms. B.'s First Amendment claim would, of course, be considered by this Court, Mr. Brown's interests as a newsgatherer are not being fully represented in the state proceeding. Thus the ruling of the state appellate court would not collaterally estop his § 1983 claim, and he is no under obligation to await the state court outcome before bringing his § 1983 federal constitutional claims in a federal forum. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ("When federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role that Congress has assigned to the federal courts to protect constitutional rights."). As the Fifth Circuit has explained:

[N]owhere in the *Younger* line of cases is it even intimated that, while a state prosecution is pending, a federal court, in an appropriate case between persons not parties to the state action, may not address issues of federal law that are simultaneously being litigated in state court. Rather, as this Court recently pointed out in *Robinson v. Stovall*, 646 F.2d 1087, 1090 (5th Cir.1981), a "plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else (whether or not the state defendant is a litigant in a federal action)." Generally speaking, abstention bars relief to a federal plaintiff only in the situation where the interests of the state defendant and the federal plaintiff are so "intertwined" as to be considered identical. But neither a mere "common interest" in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs.

*United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131, 137 (5th Cir.1981) (citations omitted).

■ The gist of defendant's argument is that since Mr. Brown failed to take advantage of opportunities to participate in the state court proceeding, such as intervening or seeking to appeal Judge Damiani's ruling in his own right, the final prong of *Younger* abstention is met. The Court has

---

**8.** Given this distinction based on the identity of the challenger, the aspect of plaintiff's complaint alleging "prior restraint of core speech," Complaint ¶ 47, would appear unavailing.

**9.** *See also Blackwelder v. Safnauer*, 689 F.Supp. 106, 119 (N.D.N.Y.1988) (in case brought by parents in particular religious group challenging on First Amendment grounds state neglect proceedings brought against some of their members, those parents who did not have state neglect proceedings pending against them could still bring federal

suit, even though all parents "are represented by the same attorney, hold similar religious beliefs, and resist state interference with the home instruction of their children for similar reasons;" the individual interests of the parents had not legally merged with those that were the subject of the state neglect proceedings, because their interests were not so intertwined that the first group of parents could vindicate their rights through the state neglect proceedings), *aff'd and appeal dismissed*, 866 F.2d 548 (2nd Cir.1989).

extensively reviewed the case law on the subject, and finds no requirement that a plaintiff seeking to enjoin enforcement of a state gag order first seek to intervene in the state court action:

> Having an opportunity to intervene doesn't bind you as a party would be bound by the judgment in the suit in which you could have intervened .... Certainly nothing in *Younger* or the cases following it suggests that persons claiming a violation of their federal rights have an obligation before turning to federal court to see whether there is some state proceeding that they might join in order to present their federal claims there.

*Hoover v. Wagner,* 47 F.3d 845, 848 (7th Cir.1995); *see also FOCUS,* 75 F.3d at 844 (citizens advocacy group that brought federal claim challenging gag order issued in state custody proceeding "could have gone directly to federal court without seeking to intervene" in state proceeding). Defendant has pointed to no cases where a court has concluded that a non-party federal plaintiff whose interests were not "intertwined" with those of the state plaintiff was nonetheless required to seek to intervene in the state proceeding before proceeding to federal court on his constitutional claims, and the Court declines to adopt such a rule in the instant case. This reasoning squares with the general principle that exhaustion of state remedies is not required in a § 1983 action. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Patsy v. Board of Regents of the State of Fla.,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The nature of the claim presented by Mr. Brown further counsels against abstention, which would necessarily result in delaying final adjudication. "It is vital to the operation of democratic government that the citizens have facts and ideas on important issues before them. A delay of even a day

or two may be of crucial importance in some instances." *Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). Accordingly, the Court concludes that *Younger* abstention is not warranted in the instant case.

■ This conclusion does not end the issue, however, for defendant also argues that the related *Rooker–Feldman* abstention doctrine requires this Court to dismiss the action. This doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because, within the federal system, only the Supreme Court may review a state court judgment. *See Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998). In one of the cases after which the doctrine is named, the Supreme Court noted that a federal court lacks jurisdiction over any claims that are "inextricably intertwined" with a state court's determinations in a judicial proceeding. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The Second Circuit has noted that this doctrine is akin to claim preclusion in some respects, concluding that:

> [T]he Supreme Court's use of "inextricably intertwined" means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding *(as either the plaintiff or defendant in that proceeding),* subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.

*Moccio v. New York State Office of Court Admin.,* 95 F.3d 195 (2d Cir.1996) (emphasis added).

 While the notion of claim preclusion and *Rooker–Feldman* may not be precisely congruent, *see, e.g., Hachamovitch,* 159 F.3d at 696 n. 2, logic dictates that *Rooker–Feldman* abstention should apply, like preclusion, only when the federal plaintiff was a party to or in privity with a party to the state court action whose outcome is being challenged. This is consonant with the Supreme Court's conclusion in a case challenging Florida's redistricting plan. *See Johnson v. De Grandy,* 512 U.S. 997, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). The state plaintiffs had sought review of the redistricting plan in state court under Florida law, and then had filed a federal lawsuit, which the United States joined. The Supreme Court first rejected the argument that claim preclusion barred the state plaintiffs' claims, because they had not had a full and fair opportunity to litigate. *Id.* at 1004, 114 S.Ct. 2647. It then went on to consider the state's claim that *Rooker–Feldman* barred the claims of the United States:

> The State does not, of course, argue that res judicata bars the claims of the United States, which was not a party in the Florida Supreme Court action. It contends instead that the Federal Government's [Voting Rights Act] challenge deserved dismissal under this Court's *Rooker/ Feldman* abstention doctrine, under which a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. But the invocation of *Rooker/Feldman* is just as inapt here, for unlike Rooker or Feldman, the United States was not a party in the state court. It was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding. The United States merely seeks to litigate its [Voting Rights Act] case for the first time, and the Government's claims, like those of the private plaintiffs, are properly before the federal courts.

*Id.* at 1005–1006, 114 S.Ct. 2647. A number of courts of appeals have relied on *De Grandy* to reject the application of *Rooker–Feldman* to non-parties, as is urged by defendant here.[10] Several of these cases also address defendant's argument that even a non-party is obligated to intervene in a state court proceeding, and that fail-

---

10. *See Johnson v. Rodrigues,* 226 F.3d 1103, 1109 (10th Cir.2000) ("As *Johnson* teaches, the *Rooker–Feldman* doctrine should not be applied against non-parties."); *Gross v. Weingarten,* 217 F.3d 208, 218 n. 6 (4th Cir.2000) (holding that "*Rooker–Feldman* does not apply, however, when the person asserting the claim in the federal suit was not a party to the state proceeding") (*citing De Grandy,* 512 U.S. at 1005–06, 114 S.Ct. 2647); *Bennett v. Yoshina,* 140 F.3d 1218, 1224 (9th Cir.1998) (holding that "since the new plaintiffs were not parties to the state suit, their suit is not barred by the *Rooker/Feldman* doctrine") (*citing De Grandy,* 512 U.S. at 1005–06, 114 S.Ct. 2647); *Kamilewicz v. Bank of Boston Corp.,* 100 F.3d 1348, 1351 (7th Cir.1996) (noting that "[w]e, too, have held that the *Rooker–Feldman* doctrine does not affect suits by or against persons who were not parties to the initial case") (*citing De Grandy,* 512 U.S. at 1005–06, 114 S.Ct. 2647); *Roe v. Alabama,* 43 F.3d 574, 580 (11th Cir.1995) (holding that the *Rooker–Feldman* doctrine did not bar the action because "the plaintiffs in this case [were] not, by the admission of all parties, parties to [the state action]. The *Rooker–Feldman* doctrine does not apply to such circumstances") (*citing De Grandy,* 512 U.S. at 1005–06, 114 S.Ct. 2647; *see also E.B. v. Verniero,* 119 F.3d 1077, 1092 (3d Cir.1997) ("*Rooker–Feldman* does not bar individual constitutional claims by persons not parties to the earlier state court litigation."); *United States v. Owens,* 54 F.3d 271, 274 (6th Cir. 1995) ("The *Rooker–Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court").

ure to do so bars a federal action under *Rooker–Feldman,* and have soundly rejected it.[11]

Like the plaintiff in *De Grandy* and the above cases, Mr. Brown is seeking to litigate his federal claims for the first time. Judge Damiani did not address the First Amendment implications of his order, and thus Mr. Brown is not directly attacking any substantive state court judgment in this action. While the Connecticut Appellate Court and this Court could come out differently on the question of the constitutionality of the gag order, this possibility is insufficient to require abstention:

> We think that the interest of avoiding conflicting outcomes in the litigation of similar issues, while entitled to substantial deference in a unitary system, must of necessity be subordinated to the claims of federalism in this particular area of the law. The classic example is the petitioner in [*Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209] and his companion. Both were warned that failure to cease pamphleteering would result in their arrest, but while the petitioner in *Steffel* ceased and brought an action in the federal court, his companion did not cease and was prosecuted on a charge of criminal trespass in the state court. The same may be said of the interest in conservation of judicial manpower. As worthy a value as this is in a unitary system, the very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the

United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system.

*Doran,* 422 U.S. at 927–28, 95 S.Ct. 2561 (citations omitted).

## Conclusion

For the foregoing reasons, plaintiff has standing to pursue his § 1983 claims as the recipient of speech, and this action is not barred under the principles of *Younger* abstention or the *Rooker–Feldman* doctrine. The defendant's Motion to Dismiss (Doc. # 8) is accordingly DENIED.

IT IS SO ORDERED.

---

**11.** *See Rodrigues,* 226 F.3d at 1109 ("We are convinced that the Rooker–Feldman doctrine does not bar a federal action when the plaintiff, as here, lacked a reasonable opportunity to litigate claims in the state court .... A person would ordinarily lack a reasonable opportunity to litigate claims in an action in which the person was not a party."); *Owens,* 54 F.3d at 274 ("A party has no obligation to attempt to intervene in a state court action when it is not named in the suit in order to preserve its rights."); *see also Valenti v. Mitchell,* 962 F.2d 288 (3d Cir.1992) ("[T]he Rooker–Feldman doctrine has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion. The basic premise of preclusion is that non-parties to a prior action are not bound. A non-party is not precluded from relitigating matters decided in a prior action simply because it passed by an opportunity to intervene.") (internal citations omitted).